UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY RIVES,

        Plaintiff,

v.

CITY OF DETROIT POLICE
DEPARTMENT, et al.,

        Defendants.
_____/

Case No. 21-12510
Hon. Denise Page Hood

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 36)

**I.    BACKGROUND**

On October 25, 2021, Plaintiff Timothy Rives filed a Complaint, with a Second Amended Complaint filed on February 10, 2022, against Defendants City of Detroit Police Department, Joseph Lennis, Antoine Hill, City of Detroit, and Ryan Jones, alleging: Deprivation of Civil Rights, Violation of 42 U.S.C. 1983 as to Defendants Lennis, Hill and Jones (Fourth and Fourteenth Amendment Excessive Force) (Count I); Excessive Force by Defendant Lennis, 42 U.S.C. § 1983 (Count II); Excessive Force by Defendant Hill, 42 U.S.C. § 1983 (Count III); Excessive Force by Defendant Jones, 42 U.S.C. § 1983 (Count IV); Failure to Intervene to Prevent Violation of Plaintiff's Fourth and Fourteenth Amendment Rights by Defendants Lennis, Hill and Jones (Count V); Assault and Battery as to Defendant

1

Lennis (Count VI); Assault and Battery as to Defendant Hill (Count VII); Assault and Battery as to Defendant Jones (Count VIII); and Gross Negligence - All Defendants (Defendants Lennis, Hill, Jones and City of Detroit Police Officers (Count IX). (ECF No. 14)

On July 23, 2021, while working undercover as part of the Detroit Police Department's drag racing detail, Defendants City of Detroit Police Officers Lennis, Hill and Jones were in an unmarked van. Lennis was driving, while Hill was in the front passenger seat and Jones in the back seat. The van was on the eastbound lane of Seven Mile Road at Outer Drive. Even though it was a one lane road, Rives was on the right of the officers' van, almost causing a collision. The vehicles were side by side waiting for the light. When the light turned green, Rives pulled in front of the officers' van and the officers followed Rives. Lennis requested a marked car to make a traffic stop. A Michigan State Police helicopter was available which videoed Rives' van. Rives' van turned left off of Seven Mile onto Rowe, going north. The officers' followed Rives at a distance. The MSP video shows Rives stopped on Rowe, exited the van, with a handgun in his right hand, walked on the road towards the back of his van and towards the officers' vehicle.

The officers fired their weapons at Rives, who was struck twice. Rives then ran into the house on 19360 Rowe, dropped his gun, and then returned outside with his hands up. Rives was detained until the medics and other police vehicles arrived.

Rives admits he had a gun in his hands but claims that he was walking towards the residence once he exited his vehicle and was running away from the officers when he was hit from the back in the left side of his left calf and the left side of his stomach. The officers claim Rives pointed his gun at them and shot first but Rives asserts that the video from the helicopter does not show Rives pointing a gun at the officers nor Rives shooting first at the officers. Rives asserts that there were no bullet holes, fragments, nor spent shell casings found at the scene from Rives' gun. However, the MSP Laboratory Report indicates at least one of the shell casings found at the scene was fired from Rives' gun. Rives survived his injuries.

This matter is before the Court on Defendants' Motion to Dismiss under Rule 12(b)(6) or for Summary Judgment under Rule 56(c) of the Rules of Civil Procedure. A response and reply have been filed.

## II. ANALYSIS

### A. Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict

4

for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

    **B.**     **Defendant City of Detroit**

Defendants seek dismissal of the City of Detroit under Rule 12(b)(6) for failure to state a claim asserting that Rives does not allege any claims nor facts as to how the City of Detroit is liable and that Rives failed to submit any evidence under Rule 56 that the City of Detroit is liable. They assert that the City of Detroit is not named in any of the counts alleged by Rives. Defendants assert that the City of

Detroit must be dismissed as to the federal and state law claims. Rives responds that he has stated a failure to train claim against the City of Detroit.

A municipality cannot be held liable under § 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A municipality is only responsible "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. There must be an "affirmative link between the policy and the particular constitutional violation alleged" for the municipality to be held responsible. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). Proof of one incident of unconstitutional activity is insufficient to impose municipal liability. *Id.* at 823-24. The evidence must show an unconstitutional policy or practice which was the "moving force" behind the officers' actions. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). The evidence can be shown by a written policy, and, if not, by circumstantial evidence. *Monell,* 436 U.S. at 692-94. The plaintiff has the burden of proof to establish the unconstitutional policy and link it with both the municipality and the injuries at issue. *Coogan v. Wixom,* 820 F.2d 170, 176 (6th Cir. 1987)."Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998).

6

A review of the Second Amended Complaint shows that the allegations against the City of Detroit are as follows:

> 12. This is a civil rights action for damages is brought pursuant to 42 USC 1983, 1985, and 1986, and the Forth (4th) and Fourteenth (14th) Amendments to the United States Constitution and related State Law claims) against the above-named Defendants for the wrongful acts, committed in the individual Defendants' individual capacities and ***for Defendant CITY OF DETROIT's unconstitutional policies and procedures*** resulting in the serious and permanent injuries arising from the unlawful shooting of Plaintiff TIMOTHY RIVES.
>
> * * *
>
> 39. Defendants DETROIT POLICE OFFICER JOSEPH LENNIS, DETROIT POLICE OFFICER ANTOINE HILL and DETROIT POLICE OFFICER RYAN JONES's actions in this regard were carried out ***as a part of the custom, policies and practices of the DETROIT POLICE DEPARTMENT and the CITY OF DETROIT, which included a failure to train, supervise discipline or properly instruct its officers in the laws of the State of Michigan regarding use of force; use of weapons, and use of deadly force, inter alia.***
>
> 40. ***Municipal liability is imposed on Defendant CITY OF DETROIT and the DETROIT POLICE DEPARTMENT by the unconstitutional policies practices and procedures of the CITY OF DETROIT and the DETROIT POLICE DEPARTMENT.***

(ECF No. 14, PageID.177)(emphasis added). Even though general allegations are alleged against the City of Detroit, Rives did not identify any specific policy nor how the officers lacked training on how to handle their guns and/or how to confront suspects. None of the specific counts in the Second Amended Complaint allege a particular policy, custom or failure to train claim against the City of Detroit. (The

7

specific counts only allege claims against the individual police officers.) Rives did not submit any evidence supporting any policy showing that the City of Detroit had an unconstitutional policy on how to confront suspects or how to handle their guns, nor any evidence on how the officers lacked training on how to confront suspects and how to properly handle their guns. The City of Detroit must be dismissed as to any federal claims for any unconstitutional policies and failure to train claims.

The City of Detroit must also be dismissed as to any state law claims under MCL 691.1407 which states, "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 91.1 authorizes a city to enact and enforce ordinances to maintain the peace. The City of Detroit was engaged in the exercise of a governmental function by operating a police force for the general health, safety, and welfare of the general public.

### C. Defendant Detroit Police Department

The Detroit Police Department must also be dismissed. A municipal police or sheriff's department is not a legal entity capable of being sued. *Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989 (6th Cir. 1994).

### D. 42 U.S.C. § 1983 / Fourth Amendment Claims against Individual Defendants (Counts I-IV)

Defendants police officers move for summary judgment as to Rives' § 1983 Excessive Force Claims under the Fourth Amendment. Rives responds that there remain genuine issues of material fact to preclude summary judgment at this time.

Section 1983 permits individual recovery for certain violations of federal law, requiring a plaintiff to allege 1) state action that 2) deprived an individual of federal statutory or constitutional rights. *Flint v. Ky. Dep't of Corr.,* 270 F.3d 340, 351 (6th Cir. 2011). Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* The Supreme Court in *Saucier v. Katz* instituted a two-step inquiry to determine qualified immunity which inquiry was to be performed sequentially. In *Pearson v. Callahan,* 555 U.S. 223 (2009), the

9

Supreme Court abandoned the requirement that the inquiry must be performed sequentially. Although courts are free to consider the questions in whatever order is appropriate, the Supreme Court ruled that the two questions announced in *Saucier v. Katz* remain good law and that it is often beneficial to engage in the two-step inquiry. *Pearson,* 555 U.S. at 236.

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but

must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

A seizure can occur in one of two ways: (1) use of force with the intent to restrain; or (2) show of authority with acquisition of control. *Torres v. Madrid*, ––– U.S. –––, 141 S. Ct. 989, 998, 1001 (2021). The first type covers uses of physical force, such as when an officer shoots an individual. *Id*. at 999. If there is no physical contact, the second type is acquisition of control. As the Supreme Court has explained, "[u]nlike a seizure by force, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement." *Id*. at 1001. The use of excessive force in a seizure is a violation of the Fourth Amendment. *See Graham*, 490 U.S. at 394. "It has been clearly established in this circuit for some time that individuals have a right not to be shot unless they are perceived as posing a threat to officers or others." *Jacobs*, 915 F.3d at 1040 (citation omitted). In some "obvious" cases, these general standards are sufficient to clearly establish that an officer's conduct is unconstitutional, even "without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). More often, however, decisions at this level of generality are insufficient to indicate whether the

11

law clearly establishes that an officers' use of force is unreasonable. *See Kisela v. Hughes*, –– U.S. ––, 138 S. Ct. 1148, 1152 (2018) (per curiam). Instead, the court must look to the law at the time of the officer's conduct and identify the "existing precedent [that] 'squarely governs' the specific facts at issue." *Id*. at 1153 (citation omitted). There need not be "a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 1152 (citation omitted). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id.* at 1153 (citation omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305 (2015) (per curiam) (citation omitted); *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 476, 481 (6th Cir. 2022). Merely possessing a weapon, without more, is insufficient to justify the use of deadly force against a suspect. *See Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir. 2007)("[E]ven when a suspect has a weapon, but the officer has no reasonable belief that the suspect poses a danger of serious physical harm to him or others, deadly force is not justified.").

The individual police officers assert that Rives had a gun in his hand and was pointing it at them. Rives asserts that although he had a gun in his hand, he did not

12

point the gun towards the officers, but was exiting the vehicle in order to enter the home. Rives did not know that the unmarked van and undercover police officers were in fact police officers. All he knew was that he was being followed by a van with white men inside the van. The officers did not identify themselves before he was shot from behind. The helicopter video did not show that Rives pointed his gun at the officers.

In the officers' version, they claim that Rives pointed the gun at them, and shot at them. There is evidence from the MSP that at least one shell casing was from Rives' gun. However, viewing the evidence in light most favorable to Rives, which the Court must under Rule 56, there remains a genuine issue of material fact as to whether the force used on Rives, when he was shot several times, was reasonable. Rives' version of the facts shows that he did not know the unmarked van that was following him was a police vehicle. Rives did not know that the undercover officers inside the van who were not in uniform were in fact police officers. The officers did not identify themselves according to Rives. All he knew was that he was being followed, and for his own safety, took out his weapon when he was attempting to get into the house when he was shot several times. He was shot from behind. Once he found out they were police officers after he got into the house, Rives came outside with his hands in the air. The individual Defendants are not entitled to summary judgment based on qualified immunity as to the federal claims against them.

13

### E.      42 U.S.C. § 1983 / Failure to Intervene (Count V)

The individual Defendants assert they are entitled to qualified immunity on Rives' failure to intervene claims. Rives responds that the officers had the opportunity and means to prevent the alleged harm by not having to exit their vehicle, by not firing their weapon at Rives. Rives claims the officers could have simply waited for the marked vehicle to arrive.

A police officer who fails to act to prevent the use of excessive force may be held liable for failure to prevent use of excessive force only if "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). There must be a predicate determination of excessive force before a claim of failure to prevent can attach. *Buren v. Crawford County*, Case No. 13-cv-14565, 2016 WL 4124092 *8 (E.D. Mich. Aug 3, 2016). Each defendant's liability must be assessed individually based on his own actions. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). An officer can be liable for preventing another officer's use of force if "the underlying episode of excessive force has spanned a sufficient period of time for a nearby defendant to both perceive what was happening and intercede to stop it." *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007). Court

have been unwilling to impose a duty to intervene where an entire incident unfolds in a matter of seconds. *Id.*

In this instance, the video evidence shows that it is about 10 seconds from the time Defendants stop their vehicle behind Rives' vehicle to the time the shooting ends. Rives failed to rebut the evidence that the entire incident unfolded within seconds. Rives did not submit any evidence to show that each officer individually had sufficient time to perceive what was happening and to intercede to stop the shooting. All three Defendants are alleged to have participated in the shooting of Rives. The individual Defendants are entitled to qualified immunity on the failure to prevent claim and such claim must be dismissed.

### F. State Law Claims of Assault and Battery against Individual Defendants (Counts VI-VIII)

The individual Defendants assert that they are entitled to governmental immunity under Michigan law on Rives' state law claims of assault and battery. Rives argues that governmental immunity does not apply since the officers violated clearly established statutory or constitutional rights citing to qualified immunity law, but not specifically addressing governmental immunity under Michigan law to the state law claims of assault and battery.

Michigan law provides government employees with immunity for intentional torts if their "acts were undertaken in good faith, or were not undertaken with malice." *Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008); *Briggs v.*

15

*Miles*, No. 15-1386, 2017 WL 2174252, at *4 (6th Cir. Mar. 6, 2017). Because the Court found above that there are genuine issues of material fact as to whether the individual Defendants are entitled to qualified immunity on Rives' Section 1983 excessive force claims this also precludes a finding of governmental immunity on the state law claims of assault and battery. With the same analysis of the facts as it applies to qualified immunity as to the federal claims, there also remain genuine issues of material facts whether the individual Defendants are entitled to governmental immunity on the state law claims. *Briggs,* at *5, citing *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009).

G. **Gross Negligence Claim (Count IX)**

Defendants assert that the facts alleged to support Rives' state law claim of gross negligence are based on the intentional torts of assault and battery. Rives responds that his gross negligence claim is pled in the alternative.

Government employees can be held liable under Michigan tort law for gross negligence, defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). However, Michigan courts have "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v. Burmeister*, 262 Mich. App. 467 (2004); *see also Sudul v. City of Hamtramck*, 221 Mich. App. 455 (1997). The Court finds that Rives' allegations that he was shot by the individual Defendants

constitute an intentional tort of assault and battery rather than gross negligence. A decision to shoot and kill is intentional. *See Latits v. Phillips*, 298 Mich. App. 109 (2012) (dismissing the plaintiff's gross negligence claim as an attempt at "artful pleading" where the defendant police officer decided to point and shoot). If a plaintiff pleads a claim that is fully premised on an excessive force claim based on an intentional shooting of a suspect by an officer, an alternative theory of gross negligence would be futile. *Gordon v. Bierenga,* Case No. 18-cv-13834, 2019 WL 2205853 at *4 (E.D. Mich. May 22, 2019). Rives' gross negligence claim must be dismissed.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(ECF No. 36)** is **GRANTED IN PART AND DENIED IN PART** as more fully set forth above.

IT IS FURTHER ORDERED that **Defendants City of Detroit and the Detroit Police Department** are **DISMISSED** with prejudice.

IT IS FURTHER ORDERED that the claims set forth in Count V (Failure to Intervene) and Count IX (Gross Negligence) are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the claims set forth in COUNTS I (Excessive Force), II (Excessive Force/Lennis), III (Excessive Force/Hill), IV

(Excessive Force/Jones); VI (Assault and Battery/Lennis), VII (Assault and Battery/Hill), and VIII (Assault and Battery/Jones) all REMAIN.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: July 30, 2024